E-FILED
Wednesday, 26 August, 2026 01:22:49 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **MATTHEW R. ANDERSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-3348** |
| | ) | |
| **PAULA CROUCH *et al.*,** | ) | |
| **Defendants.** | ) | |

**<u>ORDER</u>**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is a Motion for Leave to File an Amended Complaint (Doc. 13) filed under 42 U.S.C. § 1983 by Plaintiff Matthew R. Anderson, an inmate at Stateville Correctional Center. Plaintiff has also filed Motions for Counsel (Docs. 5, 9, 14), to identify Doe Defendants (Doc. 6), and for Injunctive Relief (Doc. 11).

## I. Amended Complaint

### A. Screening Standard

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing a complaint, the court accepts the factual allegations as true and construes them liberally in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be

provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**B. Facts Alleged**

Plaintiff's amended pleading is thirty-one pages and alleges constitutional violations from July 26, 2025, when Plaintiff entered the Sangamon County Detention Facility ("Jail"), to March 31, 2026, when Plaintiff wrote his amended pleading, which was filed on April 28, 2026. Plaintiff's pleading recounts multiple instances of being physically and sexually assaulted by other inmates and alleges claims of objectively unreasonable medical care, excessive force, free exercise of religion, supervisory liability, and conditions of confinement against sixteen identified Defendants and Advanced Correctional Healthcare ("ACH"). The Court outlines Plaintiff's allegations on his initial lack-of-medical-care claim.

On July 26, 2025, Defendant Meyer, a corrections officer, asked Plaintiff a series of intake questions, one of which Plaintiff responded by stating that he suffered from chronic obstructive sleep apnea ("OSA"). When Meyer inquired whether Plaintiff used a Continuous Positive Airway Pressure ("CPAP") machine that could be delivered to the Jail, Plaintiff explained that Springfield Police lost his newly issued CPAP during his arrest. (Doc. 13-1 at 9.) After answering Meyer's questions, an unidentified nurse told Plaintiff that neither the Jail nor ACH provides CPAPs, but Plaintiff could have his CPAP delivered to the Jail. (*Id.* at 9-10.)

On December 24, 2025, Plaintiff wrote a grievance and sent a separate request to Defendant Lieutenant Loftus regarding the need to file a police report against the

Springfield Police for losing his CPAP so his insurance company could provide another unit. Loftus told Plaintiff he would have to wait until his release to file a police report. On December 27, 2025, Defendant Lieutenant Brown provided the same response as Loftus to Plaintiff's grievance, adding that Plaintiff could also have a friend or family member file a police report on Plaintiff's behalf. (*Id*. at 10.)

Plaintiff asserts that he repeatedly informed the Jail and medical staff that he suffered from OSA and required a CPAP. Specifically, Plaintiff told Defendant nurses Angela, J.D., and Serena that he had been experiencing pain, discomfort, halted breathing, hypermania, chest pains, and manic episodes caused by the halted breathing from the lack of a CPAP machine. Angela and Serena told Plaintiff that neither the Jail nor ACH provides CPAPs. Angela told Plaintiff she would attempt to contact Plaintiff's private physician and obtain Plaintiff's sleep study and later contacted an unidentified nurse practitioner, who prescribed Plaintiff medication for heartburn and indigestion. J.D. informed Plaintiff he would look into the matter. (*Id*. at 10-13.)

On January 27, 2026, Plaintiff was seen by Defendant physician Monica Duran, who informed Plaintiff that there was nothing she could do to alleviate Plaintiff's health issues caused by the lack of a CPAP. (*Id*. at 12.) Plaintiff asserts that on March 11, 2026, he sent a letter to Defendant Jail Superintendent Beck regarding the lack of medical treatment but did not receive a response. (*Id*. at 14.)

**C. Analysis**

Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 13) is granted.

To prevail on a claim alleging inadequate medical care, a pretrial detainee must prove three elements: (1) the medical condition is or was objectively serious; (2) the defendant acted purposefully, knowingly, or recklessly concerning the consequences of his actions; and (3) the defendant's actions were objectively unreasonable—that is, not rationally related to a legitimate governmental objective. *Hardeman v. Curran*, 933 F.3d 816, 827 (7th Cir. 2019); *see also Bell v. Blaesing*, 844 F. App'x 924, 925 (7th Cir. 2021) ("[A]s a civil detainee, [the plaintiff] needed to plead only that [the defendant's] care was objectively unreasonable rather than deliberately indifferent.").

Plaintiff's account is sufficient to state a Fourteenth Amendment claim against Defendants Duran and Serena for failing to take any action to provide medical treatment for Plaintiff's respiratory condition. However, Plaintiff's account fails to state a plausible claim for relief against Defendants Angela, Beck, J.D., or Meyer.

According to Plaintiff, Defendant Meyer documented Plaintiff's medical condition during his intake, which without more is insufficient to state a plausible claim. See *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (concluding that liability does not extend to "everyone who knows about a prisoner's problems"). Defendant J.D. told Plaintiff he would inquire why Plaintiff was not being provided a CPAP machine. In this regard, Plaintiff provided facts showing that in March 2026, J.D. was surprised when Plaintiff reported he still did not have a CPAP machine, as J.D. believed Plaintiff's issue was being addressed based on his earlier inquiries. (Doc. 13 at 13.) Similarly, Angela attempted to seek medical care for Plaintiff by contacting a Nurse Practitioner, who prescribed Plaintiff

medication. These responses to Plaintiff's condition do not permit the Court to infer that J.D. or Angela committed a constitutional violation against Plaintiff.

Plaintiff does not state a claim against Defendants Brown or Loftus for their response to Plaintiff's request for assistance to file a police report. *See DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989) (holding that the Constitution "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.")). Additionally, "[p]rison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017); *see also Estate of Miller v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017) ("[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies."). Plaintiff also does not state a claim against Defendant Beck, as Plaintiff does not provide any specificity regarding the letter he sent about the alleged lack of medical care. *See Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015) ("An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation.").

Defendant ACH can be held liable under § 1983 if an unconstitutional act is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dept.*,

604 F.3d 293, 303 (7th Cir. 2010); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (stating that the standard for municipal liability in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies to corporations as well). "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby [clarify] that municipal liability is limited to action for which the municipality is … responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphases in original).

Plaintiff does not state a claim against Defendant ACH, as he has not provided facts to infer a constitutional violation under the three listed bases. *See Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014) ("The plaintiff . . . must establish a causal link between the corporation's policy (or lack of policy) and the plaintiff's injury."); *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) ("To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights.") (quoting *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)).

The Court notes that Plaintiff names Defendants Beck and Sheriff Paula Crouch based on their respective supervisory responsibilities, which does not state a plausible claim. *See Miller v. Harbaugh*, 698 F.3d 956, 960 (7th Cir. 2012) ("Because there is no vicarious liability under Section 1983, [supervisory] defendants [can] be liable only if they personally did something that violated [a plaintiff's] rights."); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

As noted, Plaintiff attempts to also assert claims for sexual assault, excessive force, free exercise of religion, and conditions of confinement against other Jail officials at various times during his Jail detention, which is not permitted. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (holding that a plaintiff may not join two claims which did not arise out of a single transaction); *see also Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (warning that district court should not permit inmate plaintiffs to flout the rules for joining claims and defendants) (citing Fed. R. Civ. P. 18, 20).

Thus, Plaintiff's remaining claims should be raised in separate lawsuits as his allegations concern different alleged violations against different individuals at various times. In other words, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George*, 507 F.3d at 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."); *see also Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot.").

## II. Identification

Plaintiff has filed a Motion to Find Unidentified Defendants (Doc. 6) that is denied. Plaintiff's filing consists of a one-page letter from the Sangamon County Sheriff's Office,

responding to Plaintiff's request for the "names and titles of medical staff" working at the Jail on August 11, 2025. (*Id*. at 2.)

Initially, the Court notes that Plaintiff's amended pleading does not name any Doe Defendants. If Plaintiff seeks to amend his complaint to add additional Defendants that are unknown at this time, the Court informs Plaintiff that after Defendants Duran and Serena have returned their waivers of service and filed an Answer to Plaintiff's pleading, which usually takes sixty days, the Court will enter a scheduling order that will open discovery. Plaintiff can then request a roster of medical personnel working on that date from Defendants' counsel. Thereafter, Plaintiff can amend his complaint to include those individuals, following the guidance contained in the Court's scheduling order.

**III. Recruitment of Counsel**

Plaintiff has no constitutional right to counsel, and the Court cannot require an attorney to accept *pro bono* appointments in civil cases. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (holding that although indigent civil litigants have no constitutional right to counsel, a district court may, in its discretion, request counsel to represent indigent civil litigants in certain circumstances). In considering Plaintiff's motion for counsel, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff's motions show that he has satisfied his threshold burden by demonstrating that he attempted to find counsel independently.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). "These two considerations 'are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand.'" (*Id.*) (quoting *Pruitt*, 503 F.3d at 655).

Specifically, courts should consider "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Eagan*, 987 F.3d at 682. "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings." *Id*. The assessment "must include 'the tasks that normally attend litigation: evidence gathering, preparing[,] and responding to motions and other court filings, and trial.'" *Id.* "Although there are no fixed criteria for determining whether a plaintiff is competent to litigate his … case, a district court certainly should consider the plaintiff's literacy, communication skills, educational level, litigation experience, intellectual capacity, and psychological history." *Id*. at 682-83.

The Court concludes that the recruitment of counsel at this early stage of the proceedings is not warranted. As explained below, entry of the Court's Merit Review Order begins the service phase. After Defendants have been served and filed their answers to Plaintiff's complaint, which usually takes sixty days, the Court will enter a

scheduling order that provides guidance and deadlines to assist Plaintiff during the discovery process. Therefore, the Court denies Plaintiff's Motions for Recruitment of Counsel (Docs. 5, 9, 14) with leave to renew on a more developed record.

**IV. Injunctive Relief**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").

The purpose of a temporary restraining order and a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). "The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions." *Anthony v. Village of South Holland*, 2013 WL 5967505, * 2 (N.D. Ill. Nov. 8, 2013). "To determine whether a situation warrants such a remedy, a district court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of America, Inc.*, 749 F.3d 1079, 1085-86 (7th Cir. 2008).

"To survive the threshold phase, a party seeking a preliminary injunction must satisfy three requirements." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 965 (7th Cir. 2018) (quoting *Girl Scouts*, 549 F.3d at 1086). The movant must show that: "(1) absent a preliminary injunction, [she] will suffer irreparable harm in the interim period prior to

final resolution of [her] claims; (2) traditional legal remedies would be inadequate; and (3) [her] claim has some likelihood of succeeding on the merits." *Id.* After the moving party satisfies each threshold requirement, the court proceeds to the balancing phase. *Id.* at 966.

Before granting injunctive relief, a court must determine whether the plaintiff's need for injunctive relief is moot. *See Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000) ("When a case is moot, it must be dismissed as non-justiciable."). "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)); *see also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) ("[The plaintiff's] prayers for injunctive relief are moot because he is no longer an inmate at [the facility] . . . [and] has not shown a realistic possibility that he will again be incarcerated in the same state facility . . . .");

The Court need not address Plaintiff's threshold requirements because Plaintiff is no longer detained at the Jail and is instead incarcerated at Stateville, where he is scheduled to remain until May 2027, when he will be released on parole. Plaintiff does not demonstrate that he is likely to be transferred back to the Jail. Consequently, his Motion for Injunctive Relief (Doc. 11) is denied.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 13) is GRANTED. The Clerk of the Court is DIRECTED to docket Plaintiff's amended pleading (Doc. 13-1); terminate Angela, Beck, Benning, Brown, Crouch, Doetsch,**

**Ferro, Gillespie, J.D., Loftus, Meyer, Sarica, Stoutameyer, Wilkens, and Advance Correctional Healthcare as parties; and add Dr. Monica Duran as a Defendant.**

2) **Plaintiff's Motions for Counsel (Docs. 5, 9, 14), to Find Unidentified Defendants (Doc. 6), and for Injunctive Relief (Doc. 11) are DENIED.**

3) **According to the Court's screening of Plaintiff's Complaint [1] under 28 U.S.C. § 1915A, Plaintiff states a Fourteenth Amendment claim for lack of medical care against Defendants Duran and Serena. Plaintiff's claim against Defendants proceeds in their respective individual capacities only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

4) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has entered an appearance before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

5) **The Court will attempt service on Defendants by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After service of process, the Court will enter an order setting discovery and dispositive motion deadlines.**

6) **Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

7) **Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.**

8) **This District uses electronic filing, which means that after Defendants' counsel**

**has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel files an appearance and the Court enters a scheduling order, which will explain the discovery process in more detail.**

9) **Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.**

10) **Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.**

11) **If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).**

12) **The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

13) **The Court directs the Clerk to attempt service on Defendants under the standard procedures.**

ENTERED August 26, 2026.

s/ *Colleen R. Lawless*

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE